HOLLOWAY, Circuit Judge,
dissenting:
I
The majority opinion is certainly well-reasoned. I cannot disagree with any part of it. Extraordinary circumstances nevertheless lead me to conclude that I cannot join the opinion, nor can I concur in the judgment. Instead, I feel compelled to dissent. As I will discuss, the investigation of this matter involved many deficiencies in law enforcement practices. None of them individually is so significant as to rise to the level of a violation of Mr. SilvaArzeta’s fundamental rights. Frankly, even in combination these departures from good police practice might not be enough to lead to the conclusion that the convictions should be reversed, even though in combination they are very, very troubling. But this case unfortunately involves much more than mere failure to follow good police practices.
Extraordinary circumstances have convinced me that I cannot in good conscience assent to affirm the judgment of the district court. These circumstances concern the trial exhibits, especially Exhibit 5, which the court’s opinion addresses in Part II-C. Exhibit 5 must be regarded as crucial evidence in this case. As the majority opinion points out, defense counsel used this exhibit in a demonstration before the jury in Mr. Silva-Arzeta’s first trial, showing the jurors that the baggies in the exhibit did not match the baggie found in Mr. Silva-Arzeta’s car. By showing the jurors in the first trial that the baggie found in his client’s car was of a different size, defense counsel was able to call into question the inference that the baggies connected Mr. Silva-Arzeta to the methamphetamine found in the apartment.
The connection concerning the baggies was critical to the prosecution’s case because Mr. Silva-Arzeta was charged with possession with intent to distribute, and the prosecution did not contend that the small amount of methamphetamine found in the car — methamphetamine that Mr. Silva-Arzeta admitted was his — was sufficient to support an inference of intent to distribute. When defense counsel examined Exhibit 5 just prior to commencement of the second trial, he realized that he would not be able to make the same argument to the second jury if the exhibit were to be admitted, because there were now many baggies in the exhibit matching the one that had been found in Mr. SilvaArzeta’s car. It was at that point that counsel raised the serious possibility that there had been tampering with the evidence.
The majority opinion notes that counsel for Mr. Silva-Arzeta challenged the chain of custody at trial after questioning Officer Mackenzie about it. But the majority does not fully explain the exceptional circumstances underlying the chain of custody. The chain of custody issue was not an issue which Mr. Silva-Arzeta directly raised on appeal, but I would find there was plain error requiring reversal of the convictions.[1]
At the conclusion of the first trial, we are told, the parties were informed that they would be responsible for their exhibits. At the second trial, counsel for Mr. Silva-Arzeta was concerned about the exhibits, as recited in the court’s opinion. When Exhibit 5 was offered in evidence, defense counsel requested and was grant *1221 ed an opportunity to voir dire Officer Mackenzie about the chain of custody. Officer Mackenzie testified that the night before trial he had received a box containing all of the prosecution’s exhibits from ATF agent Brandon McFadden, who was unavailable to testify at this trial for reasons that were unexplored other than Officer Mackenzie’s explanation that Agent McFadden was “on another case” which “has taken all his time.... ” Officer Mackenzie then put that box of exhibits in his vehicle, which was parked in the driveway of his residence overnight. That is, in itself, most unusual.
But about two months had passed since the conclusion of the first trial. Where was the box of exhibits during that time? Officer Mackenzie did not know. And that is the totality of the chain of custody testimony regarding the prosecution’s exhibits.
Given the trial court’s broad discretion in the receipt of evidence, in most cases we would not find plain error in such an evidentiary ruling. But in these truly extraordinary circumstances I believe that we can and should find plain error in this evidentiary ruling. The trial judge’s admission of Exhibit 5 in the face of the abject failure to establish the chain of custody was an abuse of discretion.
Under these unusual circumstances I would find that it was plain error to admit Exhibit 5 and would therefore reverse the convictions.
II
I add the following observations because I am genuinely troubled by the confluence in one case of so many law enforcement practices that fall short of inspiring full confidence. And of course I hope that remedial measures will be taken. It is certainly in the interests of law enforcement to at least strive to follow “best practices.”
As the court’s opinion points out, “best practices” were not followed during Mr. Silva-Arzeta’s interrogation at the police station. Unfortunately, there are other instances in the case in which best practices were ignored. Officer Mackenzie took the lead in questioning Mr. SilvaArzeta at the scene and obtaining his consent to search the apartment. As the court’s opinion notes, Officer Mackenzie spoke to Silva-Arzeta in English and later testified that Silva-Arzeta appeared to have understood the questions, but the officer also noted Silva-Arzeta’s accent and quickly inferred that Silva-Arzeta probably was more comfortable speaking in Spanish (and so Mackenzie did not himself conduct the later interrogation at the station). In these circumstances, it is surprising that the officer did not follow the common practice of asking Mr. Silva-Arzeta to give written consent to the search of his apartment.[2]
When it appears that the services of an interpreter are necessary at trial, the Court Interpreters Act provides for appointment of a certified interpreter, as was provided for Mr. Silva-Arzeta in both of his trials on the present charges. Officer Khalil is not a certified interpreter but a police officer who had attained some minimal level of proficiency through a program intended to train officers to deal with situations often faced in the course of their duties when circumstances do not permit use of fully trained interpreters. As this case demonstrates, however, it may be cold comfort indeed to provide a criminal defendant with the services of a certified interpreter at trial when the most damning evidence to be admitted at that trial is a challenged translation of the defendant’s *1222 own statements made during interrogation. Thus the Justice Department recommends use of certified interpreters instead of police officers, as the court’s opinion notes, and the department recommends the recording of interrogations as an alternative. Neither of these better practices were followed in this case. Nor did Officer Khalil even ask Mr. Silva-Arzeta to make a written statement at the end of the interrogation, another practice that our cases show is commonly used by many law enforcement agencies.
Again, none of these practices is mandatory under the Due Process Clause. But the repeated instances in a single case of failure to follow preferred procedures raises serious concerns.
Ill
Therefore, I must respectfully dissent. I would reverse in the interests of justice.

. In. his reply brief Mr. Silva-Arzeta asserts that he had raised the issue in his opening brief, but I do not believe that he did.

. Of course I do not suggest that oral consent is invalid or ineffective. This case illustrates, however, the prudence of the practice of obtaining written consent where practical.